UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY | § § § |
| v. | §  CIVIL ACTION NO. 1:23-cv-00690 § |
| MARITO SPORTS CARS INC. DBA FERRARI OF SAN ANTONIO AND CARISI, INC. | § § § § |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Sentry Select Insurance Company ("Sentry") files this Complaint for Declaratory Judgment, seeking a declaratory judgment that Sentry does not provide coverage to Marito Sports Cars Inc. DBA Ferrari of San Antonio (hereinafter referred to as "Marito") and Carisi Inc. DBA Ferrari of Austin ("Carisi") for the loss of funds due to a fraud/scam perpetrated on them by a third party. In support of this complaint, Sentry would show the following:

**PARTIES**

1.

Sentry is a citizen of the State of Wisconsin, being an insurance company incorporated in the State of Wisconsin, and having its principal place of business in the State of Wisconsin.

2.

Marito is a citizen of the State of Texas, being a corporation formed under the laws of the State of Texas and having its principal place of business in Texas. Marito may be served with summons by serving its registered agent for service of process, Akin Doherty, Klein & Feuge, P.C. As Akin Doherty, Klein & Feuge, P.C. is a professional corporation, it may be served on its registered agent for service of process, Scott C. Kopecky, 9601 McAllister Freeway, Suite 800, San

Antonio, Texas 78216.

3.

Carisi is a citizen of the State of Texas, being a corporation formed under the laws of the State of Texas and having its principal place of business in Texas. Carisi may be served with summons by serving its registered agent for service of process, Akin Doherty, Klein & Feuge, P.C. As Akin Doherty, Klein & Feuge, P.C. is a professional corporation, it may be served on its registered agent for service of process, Scott C. Kopecky, 9601 McAllister Freeway, Suite 800, San Antonio, Texas 78216.

## SUBJECT MATTER JURISDICTION AND VENUE

4.

This is an action for declaratory judgment pursuant to Title 28, United States Code, § 2201 *et seq*. Sentry seeks a determination of question(s) of actual controversy between the parties as hereinafter stated. Jurisdiction of this action is based upon Title 28, United States Code § 1332(a), there being diversity of citizenship between the parties and the amount in controversy exceeds $75,000; exclusive of interest and costs.

5.

Venue is properly placed under Title 28, United States Code § 1391.

## BACKGROUND FACTS

6.

This matter arises out of Marito/Carisi being defrauded by a thief concerning Marito's purchase of a 2021 Ferrari SF90, VIN ZFF95NLA8M0265900 (hereinafter referred to as the "Ferrari"). The thief, Murad Shalash ("Shalash"), was able to convince Marito/Carisi that he had

possession of the Ferrari, and title to the Ferrari, so that Keith Humphreys ("Hunphreys"), general manager of Marito/Carisi's Austin, Texas Ferrari dealership, wired $725,000 from the bank account of Carisi (who, like Marito is a named insured on the Sentry policy involved in this lawsuit) for the purchase of the Ferrari. The thief never had possession of the car, so that Marito/Carisi was swindled out of the $725,000.

7.

Humphreys was contacted on March 17, 2022 by Taylor Ames ("Ames"), the General Manager of Marito/Carisi's Lamborghini dealership in Austin, Texas. Ames told Humphreys he was contacted by a "buddy" named "Dale," who was looking to sell the Ferrari. Because both the Lamborghini and Ferrari Dealerships of Austin are owned by Marito/Carisi, Ames told "Dale" he would be referring him to Humphreys.

8.

Ames gave Humphreys the phone number for "Dale", which number was (954) 833-6469. Humphreys contacted "Dale" at this number, and through telephone calls and text messages, a deal was subsequently struck for Marito/Carisi to purchase the Ferrari for $725,000.00.

9.

A Bill of Sale dated March 18, 2022, for Marito/Carisi's purchase of the Ferrari for $725,000.00 was signed by Humphreys and an individual identified as Collin Harrison. The two parties listed at the top of the Bill of Sale were RBM and Ferrari Austin. Prior to the bill of sale being executed, a W-9 form for RBM of Atlanta Inc. ("RBM") was provided to Humphreys. Further, it was confirmed that RBM of Atlanta Inc. was a licensed auto dealer in the State of Georgia. Finally, a copy of the title to the Ferrari, with the seller portion of the title being executed so that title

to the Ferrari could be conveyed, was also sent to Humphreys before the funds were wired for the purchase of the Ferrari.

10.

On March 18, 2022, following receipt of the fully executed Bill of Sale, Humphreys wired $725,000.00 from Carisi's account with Amegy Bank of Texas to the following account, which was the account given by "Dale" for the money to be transferred:

> RBM LUXURY RENOVATION
> ROUTING: xxxxx0910
> ACCOUNT: xxxxxx8122
> First Financial Bank
> 255 East Fifth St.
> Cincinnati, Ohio 45202

11.

Humphreys had a transport person he uses ("Roy" with Executive Transport Solutions, LLC) already in the Atlanta area at the time the funds were wired. Humphreys called Dale and told him he had wired the money and he had a transporter there who could pick up the car. Dale told him the car was at the warehouse, and he gave Humphreys an address for the warehouse of 7200 Roswell Road, Atlanta, Georgia.

12.

The transporter went to the warehouse address on March 18, 2022, where he was advised the Ferrari was not there or not there yet. Roy thereafter called Humphreys on March 18, 2022 and told him the Ferrari was not ready to be picked up. Roy said the transporter could wait overnight and pick up the Ferrari the next day, which Humphreys okayed. The transporter went to pick up the Ferrari the next morning, Saturday, March 19, 2022. The transporter went to the dealership, not the warehouse address. A person named Dale (Dale Harrison) at the dealership told the transporter they

don't have a Ferrari. Humphreys testified at his examination under oath that Dale Harrison at the dealership in turn called him. Humphreys knew immediately he had been scammed when speaking with Dale Harrison, because Dale Harrison's voice did not match that of the "Dale" Humphreys had spoken with in arranging the purchase of the Ferrari.

13.

Mr. Harrison, who is an actual employee of RBM, told Humphreys the seller of the car must have a copy of RBM's dealer's license, and is offering cars for sale using such to scam people. Mr. Harrison told law enforcement he had no knowledge of the transaction concerning the Ferrari. In short, Marito/Carisi's funds were transferred to purchase the Ferrari, and the Ferrari was never delivered or received by Marito/Carisi in return for the funds.

14.

Of the $725,000 being claimed by Marito/Carisi, $46,030.81 has been recovered. Another $300,000 of the $725,000 of funds which was recovered by the federal government is being held by the federal government.

15.

A criminal case, Case No. 1:22-mj-227 filed in the Southern District of Ohio, was filed against Murad Shalash ("Shalash") concerning Marito/Carisi's loss of funds. The criminal case against Shalash was dismissed and was to be refiled against Shalash, but as of the time of the filing of this action, the case has not been re-filed.

## SENTRY POLICY

16.

At the time of the fraud perpetrated on Marito/Carisi were named insureds under a package

policy, Number 2551724, issued by Sentry. Marito/Carisi made a claim to Sentry under that policy for the loss of the $725,000. That policy includes the following coverages: (1) Policy No. 2551724001 - COMMERCIAL PROPERTY COVERAGE; (2) Policy No. 2551724002 - COMMERCIAL CRIME COVERAGE; and (3) Policy No. 2551724003 - COMMERCIAL AUTO COVERAGE.  Marito/Carisi's claim was denied by Sentry.

17.

The only property coverages provided by the Sentry policy are contained in: (1) BUILDING AND PERSONAL PROPERTY COVERAGE FORM (Form CP 00 10 10 12); (2) DEALERS BROADENED BUILDING AND PERSONAL PROPERTY COVERAGE Endorsement (Form CP 88 11 10 12); (3) COMMERCIAL CRIME COVERAGE FORM (Form CR 00 21 11 15); and (4) AUTO DEALERS COVERAGE FORM (Form CA 81 00 10 13).  As the following shows, no coverage under any of these forms for Marito/Carisi's loss of funds.

## BUILDING AND PERSONAL PROPERTY COVERAGE FORM

18.

The BUILDING AND PERSONAL PROPERTY COVERAGE FORM (Form CP 00 10 10 12) insures for direct physical loss or damage to Covered Property.  Under that form, Covered Property does not include bills, currency or money.  Since Marito/Carisi's claim is for loss of money, such is not Covered Property, so no coverage would exist under the BUILDING AND PERSONAL PROPERTY COVERAGE FORM.  Sentry thus seeks a declaratory judgment that there is no coverage for Marito and Carisi's loss under the BUILDING AND PERSONAL PROPERTY COVERAGE FORM of the policy because the loss does not involve Covered Property as defined in that form.

19.

Even if the loss of funds were to constitute Covered Property, no coverage would exist under the BUILDING AND PERSONAL PROPERTY COVERAGE FORM, because such coverage requires a Covered Cause of Loss. A Covered Cause of Loss is direct physical loss unless the loss is excluded or limited in the policy. The CAUSES OF LOSS - SPECIAL FORM (Form CP 10 30 10 12) contains various exclusions and limitations.

20.

One of the exclusions in the CAUSES OF LOSS - SPECIAL FORM excludes loss caused by or resulting from the "voluntary parting with any property by you (which is defined in the policy as the named insured shown in the Declarations) or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense" (hereinafter referred to as the "false pretense" exclusion). This exclusion clearly applies here, as Marito/Carisi's general manager, Humphreys, was fraudulently induced to voluntarily part with $725,000 for what he thought was the purchase of the Ferrari, when in fact such was a scam.

21.

Although the policy has an endorsement which makes the false pretense exclusion not applicable to loss resulting from acceptance of a check which is returned due to insufficient funds, that exception does not apply, since the loss does not involve Marito/Carisi's acceptance of a check which was returned for insufficient funds. Rather, the loss resulted from Marito/Carisi being duped into voluntarily parting with its/their own funds. Sentry thus seeks a declaratory judgment that there is no coverage under the BUILDING AND PERSONAL PROPERTY COVERAGE FORM for Marito/Carisi's loss because it is excluded under the "false pretense" exclusion.

## **DEALERS BROADENED COVERAGE FORM**

22.

Unlike the BUSINESS AND PERSONAL PROPERTY COVERAGE FORM, the DEALERS BROADENED BUILDING AND PERSONAL PROPERTY COVERAGE (Form CP 88 11 10 12) of the policy does provide coverage, with a limit of $25,000, for loss of money. This coverage provides in pertinent part as follows:

**(3)   Money and Securities**

    **(a)**   We will pay for loss of money and securities used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the premises described in the Declarations, or in transit between any of these places, resulting directly from:

        **1)**   Theft, meaning any act of stealing;

        **2)**   Disappearance; or

        **3)**   Destruction.

    **(b)**   This Additional Coverage is subject to the Limitations and Exclusions in the Causes of Loss Special Form. In addition, we will not pay for loss:

        **1)**   Resulting from accounting or arithmetical errors or omissions;

        **2)**   Due to the giving or surrendering of property in any exchange or purchase; or

        **3)**   Of property contained in any money operated device unless the amount of money deposited in it is recorded by a continuous recording instrument in the device.

    **(c)**   You must keep records of all money and securities so

we can verify the amount of any loss or damage.

23.

Marito/Carisi's loss of funds would not be covered under this coverage for two reasons: (1) the false pretense exclusion; and (2) the exchange or purchase exclusion.

24.

The DEALERS BROADENED BUILDING AND PERSONAL PROPERTY COVERAGE (Form CP 88 11 10 12), by incorporating the Limitations and Exclusions in the Causes of Loss Special Form, contains the "false pretense" exclusion. Marito/Carisi, through its general manager, Humphreys, was duped by the fraudster into voluntarily parting with $725,000 for the purchase of a Ferrari which did exist, but which unfortunately for Marito/Carisi, was not owned or possessed by the fraudster. Such loss by Marito/Carisi would clearly be excluded under the "false pretense" exclusion, precluding coverage under the DEALERS BROADENED BUILDING AND PERSONAL PROPERTY COVERAGE form. Sentry thus seeks a declaratory judgment that there is no coverage for Marito/Carisi's loss under this policy form because it is excluded under the "false pretense" exclusion.

25.

The DEALERS BROADENED BUILDING AND PERSONAL PROPERTY COVERAGE form also contains an exclusion for loss "due to the giving or surrendering of property in any exchange or purchase" (hereinafter referred to as the "purchase or exchange" exclusion). This exclusion is clear: If the insured suffers a loss in voluntarily surrendering funds for the purchase of property, the exclusion applies. This is the result where, like this case, fraud is involved, or no fraud is involved, as in the case where a legitimate sale occurs, but the seller did not have good title to the

property. Without such an exclusion, an insurer would basically be guaranteeing every purchase made by the insured should something go wrong.

26.

The "purchase or exchange" exclusion clearly applies to Marito/Carisi's claim. The funds of Marito/Carisi were lost in purchasing the Ferrari. The funds were remitted by Marito/Carisi, but the car was never delivered to Marito/Carisi. The exclusion would apply to these loss facts, so that no coverage would exist under the DEALERS BROADENED BUILDING AND PERSONAL PROPERTY COVERAGE form. Sentry thus seeks a declaratory judgment that there is no coverage for Marito/Carisi's loss under this policy form because it is excluded under the "purchase or exchange" exclusion.

## COMMERCIAL CRIME COVERAGE FORM

27.

The Sentry policy issued to Marito/Carisi also included the COMMERCIAL CRIME COVERAGE FORM (Form CR 00 21 11 15). This form includes Computer and Funds Transfer Fraud Coverage contained in Section **A.6.** of the COMMERCIAL CRIME COVERAGE FORM. That coverage, which has a limit of $100,000, provides in pertinent part as follows:

> **6.** **Computer And Funds Transfer Fraud**
>
> **a.** We will pay for:
>
> . . .
>
> **(2)** Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that account.

28.

The term "fraudulent instruction", as concerns this matter, is defined in the COMMERCIAL CRIME COVERAGE FORM as follows:

> **12.** "Fraudulent instruction" means:
>
> **a.** With regard to Insuring Agreement **A.6.a.(2):**
>
> . . .
>
> **(2)** A written instruction (other than those covered under Insuring Agreement **A.2.**) issued to a "financial institution" directing the "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities from that "transfer account", through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by you, but which in fact was issued, forged or altered by someone else without your knowledge or consent.

29.

The instruction to wire the $725,000 was issued by Humphreys to Marito/Carisi's bank in writing. Humphreys was authorized to do such wire transfers by Marito/Carisi. This is not a situation where someone purported to be Humphreys and was able to get the bank to wire the funds from Marito/Carisi's bank account without Marito/Carisi's knowledge or consent. As such, the $725,000 of funds were not lost because of a "fraudulent instruction" as required under the Computer and Funds Transfer Fraud coverage. Since the requirement of a "fraudulent instruction" is lacking, no coverage would exist under the Computer and Funds Transfer Fraud coverage. Sentry thus seeks a declaratory judgment that there is no coverage under the Computer and Funds Transfer Fraud provision because there was not a "fraudulent instruction" as defined in the policy.

30.

The Computer and Funds Transfer Fraud coverage also does not apply because that coverage contains an exclusion which excludes loss resulting from the giving or surrendering of property in any exchange or purchase. For the same reasons such exclusion applies under the DEALERS BROADENED BUILDING AND PERSONAL PROPERTY COVERAGE, it would likewise apply under the Computer and Funds Transfer Fraud coverage. Sentry thus seeks a declaratory judgment that there is no coverage under the Computer and Funds Transfer Fraud provision because the loss claimed by Marito/Carisi is excluded under the "purchase or exchange" exclusion.

## AUTO DEALERS COVERAGE FORM

31.

The AUTO DEALERS COVERAGE FORM contains Physical Damage Coverage for a covered "auto"). The FALSE PRETENSE COVERAGE endorsement insures for the following:

> **False Pretense Coverage**
>
> **a.** We will pay for "loss" to a covered "auto" caused by "false pretense".
>
> **b.** For "loss" caused by "false pretense", a covered "auto" shall include any "auto" you have acquired and, if coverage symbol 30 is indicated for the Physical Damage Coverage, a "customer's auto" in your possession for service or repair.

The False Pretense Coverage would not apply, because no covered "auto" is involved, nor is a "false pretense" involved. Please note the following regarding each of these items.

32.

A covered "auto" for purposes of the Physical Damage Coverage is designated by Symbols 28 and 31. Symbol 28 is hired "autos", which are only those "autos" Marito/Carisi leases, hires,

rents or borrows, but not including any "auto" which Marito/Carisi leases, hires, rents, or borrows for any of its "employees", partners (if the named insured is partnership), members (if the named insured is a limited liability company) or members of their households.  Symbol 31 is Dealers "autos" Scheduled "autos" and other "autos" held for sale, which is/are any "auto" Marito/Carisi owns and holds for sale or use in its dealership or garage business, a "consigned "auto", and any auto described in Item Seven of the Declarations for which Physical Damage Coverage is designated to apply.

33.

The Ferrari which Marito/Carisi attempted to purchase would not be a covered "auto".  The Ferrari was not leased, hired, rented or borrowed by Marito/Carisi.  The Ferrari was also not owned and held for sale or use in Marito/Carisi's dealership or garage business.  Marito/Carisi never owned the Ferrari or acquired possession of it so as to be able to hold it out for sale.  The Ferrari was not a "consigned auto" as that term is defined in the Physical Damage Coverage, nor was it an "auto" described in Item Seven of the Declarations for which Physical Damage Coverage is designated to apply.

34.

The term "false pretense" is defined in the endorsement as meaning "loss" to a covered "auto" resulting from any of the following:

    **1.**    Someone causing you to voluntarily part with possession of or evidence of title to a covered "auto" when induced, at the time of sale, lease or rental by:

        **a.**    Receipt of a forged counterfeit instrument in payment;

        **b.**    Receipt of a check or other instrument written on an account closed before the instrument is presented for

        payment;

  **c.**  A false or forged name, social security number or signature on a credit application or if coverage is provided for leased or rented "autos", a rental or lease agreement;

  **d.**  Any other criminal scheme, criminal trick or criminal device.

    Except for a "consigned auto", you must have had legal title to and possession of the covered "auto" immediately prior to the "loss". For a "consigned auto", you must have had possession of the covered "auto" immediately prior to the "loss".

**2.** Having acquired an "auto" from a seller who did not have legal title.

**3.** Confiscation of a covered "auto" you own by a governmental or civil authority, for alleged or actual violations of laws governing the distribution, sale or use of a controlled substance, if the alleged or actual violations were committed by your customer or your "employee" without the knowledge or consent of you, your partners (if you are a partnership), members (if you are a limited liability company), directors or executive officers.

**4.** If a covered "auto", your voluntarily parting with a "customer's auto" resulting from a fraudulent scheme, trick or device. The "customer's auto" must have been in your possession immediately prior to the "loss".

**5.** Criminal conversion of a covered "auto" by:

  **a.**  Any person to whom you furnish a covered "auto" for their regular use; or

  **b.**  Your customer.

All other terms and provisions of the policy remain unchanged.

35.

The Ferrari was not a "consigned auto" as that term is defined in the physical Damage Coverage. Accordingly, under the False Pretense coverage, Marito/Carisi was required to have legal title to and possession of the Ferrari for coverage under that endorsement to apply. Marito/Carisi never had legal title to the Ferrari, much less possession of the Ferrari. Marito/Carisi never acquired the Ferrari. For all these reasons, no "false pretense" as defined in the endorsement occurred, which would preclude any coverage under the FALSE PRETENSE COVERAGE endorsement.

## DECLARATORY RELIEF SOUGHT

36.

For all of the reasons set forth above, Sentry seeks declaratory judgment that Marito/Carisi have no coverage under Sentry Policy Numbers 2551724001, 2551724002 or 2551724003 for the funds which Marito/Carisi lost as a result of its attempt in March of 2022 to purchase the Ferrari.

37.

There exists an actual controversy between Plaintiff and Defendant within the jurisdiction of this Court involving the rights and liabilities under an insurance policy. This controversy may be determined by judgment of this Court, without other suit.

WHEREFORE, Plaintiff, Sentry Select Insurance Company, prays:

A.  This Court determine and adjudicate the liabilities of the parties herein with respect to the policy of insurance described in this Complaint for Declaratory Judgment;

B.  This Court find and declare that Marito/Carisi have no coverage under Sentry Policy Numbers 2551724001, 2551724002 or 2551724003 for the funds which Marito/Carisi lost as a result of its attempt in March of 2022 to purchase the Ferrari;

C.  That Sentry be awarded its costs of court; and

D.     That Sentry be awarded such other and further relief to which it may be entitled, at law or at equity.

Respectfully submitted,

S/Russell J. Bowman
Russell J. Bowman
Texas State Bar No. 02751550
800 West Airport Freeway, Suite 860
Irving, Texas 75062
(214) 922-0220
(214) 922-0225 (FAX)
ATTORNEY FOR PLAINTIFF